**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

CHRISTOPHER J. GARDINER,

               Plaintiff,

v.                                       Case No. 04-60104
                                       HON. MARIANNE O. BATTANI

ALBERTO GONZALES, U. S. ATTORNEY
GENERAL, U.S. Department of Justice,

               Defendant.

_____/

**OPINION AND ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

      Before the Court is Defendant's Motion for Summary Judgment (Doc. No. 19).

The Court heard oral argument on January 11, 2006, and at the conclusion of the

hearing, the Court took the matter under advisement.  For the reasons that follow, the

Court GRANTS Defendant's Motion.

**I. BACKGROUND**

      Plaintiff, Christopher J. Gardiner, a Caucasian male, filed this action against

Defendant Alberto Gonzales, alleging violations of Title VII of the Civil Rights Act of

1964, 42 U.S.C. § 2000e-2(a).  According to Plaintiff, Defendant discriminated against

him because of his race and retaliated against him for initiating contact with an EEO

Counselor and/or filing charges with the Equal Employment Opportunity Commission

("EEOC").

      These claim arise out of Plaintiff's employment by the Drug Enforcement

Administration ("DEA") as a special agent until June 2002.  Gardiner began his

employment with the DEA in 1987, in Houston, Texas.  He transferred to Detroit in 1997, and began working in the Detroit Airport Enforcement Group.  While in that position, he was rated "outstanding."

In March 1999, Plaintiff transferred to the Field Division and was assigned to the Asset Forfeiture Group.  Group Supervisor ("GS"), James O'Brien, a Caucasian male, supervised Plaintiff.  Conflicts arose between O'Brien and Gardiner regarding work assignments and expectations.  Specifically, in July 1999, O'Brien counseled Plaintiff about his job performance.  Within two weeks, Plaintiff requested a transfer because of personality conflicts.  The request was denied.  Despite their differences, O'Brien rated Gardiner's work performance as outstanding.

On October 19, 1999, Gardiner gave his second line supervisor, Assistant Special Agent in Charge ("ASAC") Kenneth Johnson, an African-American male, a memo detailing Plaintiff's interest in two group supervisor positions.  Plaintiff expected Johnson to forward the memo.  Instead, Johnson returned Plaintiff's memo to him on October 22, 1999, indicating that Plaintiff had not followed proper procedures.

Gardiner subsequently contacted an EEO counselor, Ron Rodriguez, on January 5, 2000.  They discussed Plaintiff's situation a few times.  Def.'s Ex. 7 at 4.  During this time frame, Plaintiff decided to "attempt to work things out" and "delay in filing the formal EEOC complaint."  Id.; Def.'s Ex. 2 at 3.  He informed Rodriguez of the decision.  Id. Consequently, no further action was taken.  It is undisputed that Rodriguez never issued Plaintiff a Right to File a Formal Complaint letter.

Gardiner attempted, albeit unsuccessfully, to resolve the conflicts internally with Johnson.  They met on January 21, 2000, and discussed work rules.  The meeting did

-2-

not go well, and on February 16, 2000, Plaintiff met with Special Agent in Charge ("SAC") Ruth Beaver and requested he be removed from Johnson's chain of command. Def.'s Ex. 2. Plaintiff also learned that he was the subject of an Office of Professional Responsibility ("OPR") investigation arising out of a suspicion that he provided false or misleading information on a DEA form in order to seize property. Def.'s Ex. 1 at 66-68. Gardiner was cleared of any wrongdoing.

In April 2000, Patrick Valentine, a Caucasian male, replaced Johnson as Plaintiff's second line supervisor. Def.'s Ex. 7 at 6. Plaintiff subsequently asked to be transferred from the Asset Removal Group, and ASAC Charles Moffitt placed Plaintiff in Enforcement Group III. Def.'s Ex. 30 at 2. Plaintiff reported to GS Robert Hill, an African American male; his second line supervisor was Moffitt, a Caucasian male. Def.'s Ex. 1 at 85-86. Plaintiff claims that Hill took away Plaintiff's cell phone, required him to work from 8:30 a.m. to 5:30 p.m., prevented him from exercising in the DEA gym during work hours, suspended his government car privileges for one week, and monitored his time on the job in retaliation for Plaintiff's EEO activity. Def.'s Ex. 1 at 92-103.

In May 2001, Hill was contacted about Gardiner, who's name was on the best qualified list for supervisor positions, regarding openings in Charleston, South Carolina and Reno, Nevada. Def.'s Ex. 7 at 6. Hill indicated that Plaintiff did not preform at a GS-13 level during his first three months in Group III, but had shown improvement. Def.'s Ex. 9A at 244-46.

Thereafter, Gardiner sent a letter to the Chief Inspector at Office of Professional Responsibility on May 18, 2001, accusing Hill of retaliation and discrimination in

violation of the Whistleblowers Act.  Def.'s Ex. 11.  Plaintiff specifically complained about Hill's comments relative to Plaintiff's job performance.  Hill was cleared of wrong doing after the allegations were investigated.  Def.'s Ex. 12.

On June 4, 2001, Gardiner asked Moffitt to remove him from Group III.  The following day, Moffitt, Hill, and Gardiner met to discuss Plaintiff's concerns, specifically that Plaintiff was being subjected to harassment and discrimination.  Def.'s Ex. 13.  Plaintiff then sent a letter to Moffitt, reiterating his concerns.  Moffitt advised Plaintiff, in writing, to file a discrimination complaint with the Detroit Division EEO Counselor, if necessary.  Moffitt included a copy of EEO procedures and the telephone numbers of the EEO counselors.  Def.'s Ex. 14.

Not until early September, did Gardiner meet with an EEO counselor.  Specifically, on September 12, 2001, Plaintiff told Roxanne Peterson that Hill, Johnson, Moffit, and O'Brien had discriminated against him because of his race and in retaliation for his prior EEO activity.  Def.'s Ex. 20.

On September 19, 2001, Plaintiff requested a transfer.  Before any action was taken pursuant to the request, Peterson gave Plaintiff a Notice of Final Interview on September 27, 2001.  Def.'s Ex. 21.  Plaintiff subsequently filed a formal EEO complaint of discrimination.  Def.'s Ex. 20.  Plaintiff amended his EEO Complaint on January 9, 2002, alleging that Hill retaliated against him by criticizing his work performance in front of coworkers and threatening him in October 2001.  Specifically, on October 25, 2001, while Plaintiff was driving a government car assigned to a coworker, Hill passed him on the freeway and "gave him the finger."  Def.'s Ex. 1 at 107-08.

Shortly after the incident, Plaintiff requested an immediate transfer because he

-4-

was "uncomfortable" working with Hill and felt "threatened" by the incident.  Def.'s Ex. 16.  On March 18, 2002, Plaintiff again requested reassignment from Group III.  The following month, Plaintiff was placed in the Technical Group, where he worked until he resigned in June 2002.

Plaintiff's complaints were investigated and referred to the EEOC for a hearing. The DEA filed a motion to dismiss the complaint for failure to exhaust administrative remedies.  Plaintiff withdrew his request for an administrative hearing, and the EEOC entered an order of dismsisal on March 29, 2004, before ruling on the DEA's motion. Plaintiff filed his complaint in this Court on May 28, 2004.

## II.  STANDARD OF REVIEW

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment may be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  As the United States Supreme Court has ruled:  In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The movant bears the burden of demonstrating the absence of all genuine issues of material fact.  See Hager v. Pike County Bd. of Educ., 286 F.3d 366, 370 (6th Cir. 2002).  "[T]he burden on the moving party may be discharged by 'showing' - that is, pointing out to the district court - that there is an absence of evidence to  support the

-5-

nonmoving party's case." Celotex, 477 U.S. at 325.

Once the moving party carries that burden, the burden then shifts to the nonmoving party to set forth specific facts showing a genuine triable issue. FED. R. CIV. P. 56(e); Chao v. Hall Holding Co., 285 F.3d 415, 424 (6th Cir. 2002). "The movant has the burden of showing that there is no genuine issue of fact, but the plaintiff is not thereby relieved of his own burden of producing in turn evidence that would support a jury verdict." Anderson v. Liberty Lobby Inc., 477 U.S. 242, 256 (1986). The court must view the evidence in a light most favorable to the nonmovant as well as draw all reasonable inferences in the nonmovant's favor. See Hunt v. Cromartie, 526 U.S. 541, 549 (1999); Sagan v. U.S., 342 F.3d 493, 497 (6th Cir. 2003).

"A fact is 'material' and precludes grant of summary judgment if proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and would necessarily affect [the] application of appropriate principle[s] of law to the rights and obligations of the parties." Kendall v. Hoover Co., 751 F.2d 171, 174 (6th Cir. 1984) (citation omitted) (quoting BLACK'S LAW DICTIONARY 881 (6th ed. 1979)). To create a genuine issue of material fact, the nonmovant must do more than present some evidence on a disputed issue.

> There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmovant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

Anderson, 477 U.S. at 249-50. "No genuine issue of material fact exists when the 'record taken as a whole could not lead a rational trier of fact to find for the non-moving party.'" Michigan Paytel Joint Venture v. City of Detroit, 287 F.3d 527, 534 (6th

Cir. 2002) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

The evidence itself need not be the sort admissible at trial.  Tinsley v. General Motors Corp., 227 F.3d 700, 703 (6th Cir. 2000).  However, the evidence must be more than the nonmovant's own pleadings and affidavits.  Smith v. Campbell, 250 F.3d 1032, 1036 (6th Cir. 2001).  The mere existence of a scintilla of evidence in support of the non-movant is not sufficient; there must be sufficient evidence upon which a jury could reasonably find for the non-movant.  Anderson, 477 U.S. at 252.

**III.    Analysis**

Defendant asks the Court to dismiss the claims of race discrimination and retaliation on procedural grounds as well as on the merits.  Defendant argues that Plaintiff failed to exhaust his administrative remedies and did not timely file his administrative complaint.  In the alternative**,** Defendant argues that Plaintiff has failed to make a prima facie case of either race discrimination or retaliation.  Each argument is addressed below.

**A.  Exhaustion**

A federal employee who claims to be a victim of employment discrimination must exhaust his administrative remedies.  Brown v. Gen. Serv. Admin., 425 U.S. 820, 832 (1976).  Here, the Court must ascertain whether Plaintiff exhausted his administrative remedies relative to his January 2000 contact.

The EEOC regulations require an aggrieved employee to contact an Equal Employment Opportunity Counselor within forty-five days of the alleged discriminatory

-7-

event.  29 C.F.R. §1614.105(a)(1) (governing pre-complaint processing).  At the initial

counseling session, counselors advise individuals in writing of their rights and

responsibilities, including the right to request a hearing or an immediate final decision

after an investigation by the agency.  29 C.F.R. § 1614.105(b)(1).  In addition, the

employee must file a formal complaint of discrimination within fifteen days of the date he

receives a Notice of Final Interview from the EEO Counselor.  See 29 C.F.R. §

1614.105 (a)(1).

It is undisputed that Plaintiff initiated contact regarding race discrimination in

January 2000.  Mere contact with an EEO counselor does not satisfy the exhaustion

standard.  Therefore, the Court considers the merits of Plaintiff's argument that because

he never concluded informal counseling and never received a Notice of Final Interview,

he had no duty to bring a formal complaint.

The Court agrees with Plaintiff that in the absence of a Notice of Final Interview,

he had no duty to bring a formal complaint.  It nevertheless rejects Gardiner's assertion

that Rodriguez's failure to properly process the EEO contact excuses any failure to

exhaust the claims.  The uncontested facts show not only that Plaintiff "abandoned" his

initial, informal complaint, but also that he received notice of his rights on at least three

occasions.  First, the record shows that EEO procedures were posted in the workplace.

Def.'s Ex. 1 at 38-9.  Further, in his Affidavit, Gardiner admits that in January 2000,

Rodriguez provided a copy of EEO rights and responsibilities during their counseling

sessions.  Def.'s Ex. 7 at 3.  Third, Moffitt gave Plaintiff a copy of the EEO procedures.

Moreover, it is undisputed that when Rodriguez informed Gardiner that DEA

management was aware of the existence of an EEO problem, which Rodriguez had

-8-

been unable to resolve, Gardiner's responded that he had decided to work things out himself and to "delay in filing the formal EEO complaint (step #2) in the EEO process." Def.'s Ex. 1 at 3.

Plaintiff's decision to resolve the matter directly with upper management does not extend his filing deadline. "Although an attempt to resolve a dispute through private channels is commendable, resort to those channels, whether formal. . .or informal, does not justify suspending the running of the elimination period. Allowing an employee to pursue his own private remedies before turning to the EEOC or before filing a formal complaint with EEOC would render the limitations period meaningless. See e.g., Carter v. Dept. of Veterans Affairs, 2005 WL 1155099 (No. H-04-1379 S.D. Tex. May 11, 2005) (holding that an effort to resolve problems informally does not extend the filing deadline). See also Miller v. Smith, 584 F.Supp. 149 (D.C. 1984) (noting that the regulations require employees to file timely written complaints). In Miller v. Smith, 584 F.Supp. at 154, the court rejected the argument that filing an informal and formal EEO complaint satisfied the time limitations of Title VII. The court noted that the Plaintiff had not exhausted his administrative remedies because he filed and then withdrew his EEO complaints. Id.

Here, the Courts finds that Plaintiff in essence withdrew his claim. Following his instructions to Rodriguez, Gardiner waited for 18 months to file a formal complaint. Gardiner opted to work out his problems informally, and he made his plan known to Rodriguez. Only when a complaint is not resolved informally does the counselor issue a Notice of Final Interview. Def.'s Ex. 14. In light of the facts of this case, allowing

-9-

Plaintiff to proceed would undermine the purpose of the exhaustion requirement.  The exhaustion requirement not only facilitates an informal, conciliatory resolution of disputes, it reduces the burden on federal courts.  Miller, 584 F. Supp. at 151.  In addition, the process affords the agency the opportunity to develop a record, apply its expertise and discovery and correct its own errors.  Id. (citing Sampson v. Civiletti, 632 F.2d 860, 862-63 (10th Cir. 1980).  Here, Gardiner admitted he had decided not to file a written complaint.  The exhaustion requirement simply is not satisfied under these circumstances.  Accordingly, Gardiner is precluded from bringing any claims of discrimination based upon the conduct at issue prior to January 2000.

### B.  Timeliness

Plaintiff contacted EEO Counselor, Roxanne Peterson, on September 12, 2001, claiming he had been discriminated against on the basis of his race and in retaliation for his participation in EEO activity in January 2000.  Def.'s Ex. 21.  Plaintiff timely filed a formal EEO complaint of discrimination.  Def.'s Ex. 20 at 3-8.  Plaintiff amended his EEO complaint on January 9, 2002, adding a claim that Hill had retaliated by criticizing Gardiner's work performance and behaving in a threatening manner in October 2001.  Additionally, Plaintiff claimed that ASAC Moffitt yelled at him and instructed him to use the proper chain of command.  Def.'s Ex. 22 at 2.  The EEOC investigated Plaintiff's claims and issued him a Notice of Final Interview.

According to Gardiner, in April 2001, he applied for an overseas lateral position in Bridgetown, Barbados, which he did not get.  Gardiner also asserts that he was not promoted despite being a finalist for supervisory positions in Charleston, South Carolina

-10-

and Las Vegas, Nevada.  See Def.'s Ex. 20.  Plaintiff asserts that Hill defamed Plaintiff's

work performance.   In Paragraph 10 of Plaintiff's Complaint in this Court, he indicates

that DEA managers engaged in an organized campaign to prevent Plaintiff from getting

a promotion.  Plaintiff asserts that he has applied for 39 merit promotions and transfers

since 2000.  See Pl.'s Suppl. Ex., Attachment I (charting the positions, locations and

dates on which Plaintiff applied for these jobs).  Nevertheless, only three of the positions

were the subject of Plaintiff's EEOC complaint.

The Supreme Court has declared that alleged discrete discriminatory acts are not

actionable if they are not the subject of a timely filed EEO complaint.  Nat'l R.R.

Passenger Corp. v. Morgan, 536 U.S. 101 (2002) (holding that "[e]ach discrete

discriminatory act starts a new clock for filing charges").  In Nat'l R.R. Passenger Corp.,

536 U.S. at 114 (emphasis added), the Supreme Court determined:

> Discrete acts such as termination, **failure to promote,
> denial of transfer**, or refusal to hire are easy to identify.
> Each incident of discrimination and each retaliatory adverse
> employment decision constitutes a separate actionable
> unlawful employment practice.  [Plaintiff] can only file a
> [claim] to cover discrete acts that occurred within the
> appropriate time period.

Here, Plaintiff only identified one transfer claim and two promotion claims when

he filed his EEO complaint.  The transfer claim at issue involved an overseas

assignment available in June of 2001.  The promotion claims involved Plaintiff's

application in May 2001, for supervisory positions in South Carolina and Nevada.

Further, EEOC regulations are clear that within 45 days of the alleged discriminatory

-11-

act, the employee must contact an EEO counselor.  Here, Plaintiff failed to contact a counselor or file his EEO claims within forty-five days of these discrete discriminatory acts.  Consequently, absent equitable tolling, Plaintiff's claim of retaliation based upon these incidents is untimely.

Although equitable tolling is permitted in certain circumstances, the circumstances here do not warrant it.   Andrews v. Orr, 851 F.2d 146, 151 (6th Cir. 1988).  First, Plaintiff had actual and constructive notice of his EEO rights and responsibilities.  Second, there was nothing beyond his control that prevented him from complying with the time limits set forth in the EEO regulations.  Third, Plaintiff told Rodriguez that he had decided to delay filing a formal EEO complaint.  Fourth, Plaintiff elected to pursue other avenues; for example, initiating an OPR investigation instead. Fifth, Plaintiff was in contact with his attorney during this time, and he failed to exercise due diligence with respect to his discrimination claims.  See Def.'s Exs. 11, 16, 20, 22. Furthermore, Plaintiff does not cite to any misconduct by Defendant that would have prevented him from actively pursuing his claims.  Finally, ignorance of the law and excusable neglect are insufficient to invoke equitable tolling.  Rose v. Dole, 945 F.2d 1331, 1335 (6th Cir. 1991).

In sum, the requirement that a Title VII plaintiff timely exhaust his administrative remedies demands strict compliance and the court should not disregard those requirements "out of vague sympathy for particular litigants."  Baldwin County Welcome Center v. Brown, 466 U.S. 147, 152 (1984).  This Court, therefore, declines to excuse Plaintiff's failure to comply with the procedural requirements, and they may not form the

basis of Plaintiff's claims of discrimination or retaliation. For this reason, Plaintiff's claims that he has been denied 39 merit promotions and transfers are either untimely or unexhausted.

## C. Race Discrimination

Even if Plaintiff had complied with the procedural requirements of Title VII, he cannot establish a *prima facie* case of disparate treatment. A Title VII plaintiff may prove race discrimination either by direct or circumstantial evidence. <u>Rowan v. Lockheed Martin Energy Sys., Inc.</u>, 360 F.3d 544 (6th Cir. 2004). In the absence of direct evidence, federal courts apply a three-step legal analysis to employment discrimination cases. <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973). Plaintiff has the initial burden of establishing a *prima facie* case.

To prove a *prima facie* case of race discrimination based upon the failure to promote or transfer, "a plaintiff must show that: (1) he is a member of a protected class; (2) he applied and was qualified for a promotion; (3) he was considered for and denied the promotion; and (4) other employees of similar qualifications who were not members of the protected class received promotions." <u>Sutherland v. Mich. Dep't of Treasury</u>, 344 F.3d 603, 614 (6th Cir. 2003). The Sixth Circuit has adapted this four-prong test to cases of reverse discrimination, where a member of the majority is claiming discrimination on the basis of race. In such cases, to satisfy the first prong of the prima facie case, the plaintiff must "demonstrate 'background circumstances [to] support the suspicion that the defendant is that unusual employer who discriminates against the majority.'" <u>Zambetti v. Cuyahoga Cmty. Coll.</u>, 314 F.3d 249, 255 (6th Cir. 2002) (quoting

-13-

Murray v. Thistledown Racing Club, Inc., 770 F.2d 63, 67 (6th Cir.1985) (quoting Parker v. Baltimore and Ohio R.R. Co., 652 F.2d 1012, 1018 (D.C.Cir. 1981))).   Specifically, where a Caucasian person is claiming discrimination, to satisfy such background circumstances, "the plaintiff can [offer proof that] evidence of the defendants' unlawful consideration of race as a factor in hiring in the past justifies a suspicion that incidents of capricious discrimination against whites because of their race may be likely." Zambetti, 314 F.3d at 256 (citations and quotations omitted).   If the plaintiff cannot produce facts supporting each element of the prima facie case, then the defendants are entitled to summary judgment.   Pierce v. Commonwealth Life Ins. Co., 40 F.3d 796, 801 (6th Cir.1994).

If plaintiff meets his burden of proof, then the employer merely has to articulate a legitimate nondiscriminatory reason for its decision.   Texas Dep't of Comty. Affairs v. Burdine, 450 U.S. 248, 258 (1981).   Defendant's "burden is one of production only, not of persuasion."   Reeves v. Sanderson Plumbing Prod., Inc., 530 U.S. 133, 142-43 (2000).   Once the employer articulates a legitimate nondiscriminatory reason, the burden is on the plaintiff to prove by a preponderance of evidence, that the reasons offered by the employer for its adverse action is not its true reason, but a pretext for intentional discrimination.   Dews v. A.B. Dick Co., 231 F.3d 1016, 1021 (6th Cir. 2000).

In this case, Defendant points to Plaintiff's lack of proofs regarding the first factor. Plaintiff has not advanced any evidence to show that Defendant is inclined to discriminate against Caucasians.   Further, Gardiner has not sustained his burden to show he was not promoted because of his race inasmuch as the majority of positions in

-14-

question were given to Caucasian employees.

In response, Plaintiff advances neither argument or evidence to shore up this shortcoming in his prima facie case.  Instead, he argues that even if Defendant has met its burden in articulating legitimate non-discriminatory reasons in response to his allegations, he has nonetheless shown some evidence of pretext.  His position is that the totality of actions taken against him precludes any innocent explanation.  All of his supervisors found his work outstanding as reflected in his performance evaluations.  The sole exception during his tenure with DEA was Hill.

Plaintiff's generic assertion, that Hill treated him progressively worse, culminating in his lukewarm recommendation of Plaintiff for a supervisory position, does not satisfy his burden to show pretext.  It is not the Court's province on summary judgment to decide whether the Defendant's evaluation of Plaintiff's job performance was accurate, only whether it really was the reason Plaintiff was not promoted or transferred.  See Hawkins v. PepsiCo, Inc., 203 F.3d 274, 279 (4th Cir.2000) (citing DeJarnette v. Corning Inc., 133 F.3d 293, 299 (4th Cir.1998) (assessing a pregnancy discrimination claim)), cert. denied, 531 U.S. 875 (2000).  Further, Plaintiff's characterization that he was the most qualified candidate for the job promotions does not open the door to substitute his judgment or that of this Court's for his employer's.  DeJarnette at 298-99.  In sum, Gardiner still must establish that similarly situated minority employees were treated more favorably than he.  He has not done so.  Accordingly, even if Plaintiff's reverse discrimination were properly before this Court, it would fail on the merits.

**D.  Retaliation under Title VII**

-15-

Section § 2000e-3(a) forbids

> an employer to discriminate against any of his employ-
> ees. . . because [the employee] has opposed any practice
> made an unlawful employment practice by this subchapter,
> or because [the employee] has made a charge, testified,
> assisted, or participated in any manner in an investigation,
> proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a).   Disparate treatment as well as severe or pervasive supervisor harassment directed at an individual because he "has opposed any practice made an unlawful employment practice by" Title VII constitutes "discrimination" under 42 U.S.C. § 2000e-3(a).

Thus, to prove a prima facie case of Title VII retaliation, a plaintiff must now prove that: (1) he engaged in activity protected by Title VII; (2) this exercise of protected rights was known to the defendant; (3) the defendant thereafter took adverse employment action against the plaintiff, or the plaintiff was subjected to severe or pervasive retaliatory harassment by a supervisor; and (4) there was a causal connection between the protected activity and the adverse employment action or harassment. Bowman v. Shawnee State Univ, 220 F.3d 456 (6th Cir. 2000).

The parties do not dispute the first criteria is met.  It is further undisputed that DEA management in Detroit knew of Plaintiff's protected activity.[1]  Accordingly, the Court considers whether Plaintiff was suffered an adverse employment action or was subjected to severe harassment.

---

[1]Plaintiff presented no evidence that the members of the Career Board, who made promotional decisions, were aware of Plaintiff's protected activity.

-16-

### 1.  Adverse action

In support of his retaliation claim, Plaintiff states that after his initial contact with the EEO Counselor in January 2000, the treatment he received from Defendant got progressively worse.   Hill took away Plaintiff's cell phone, assigned Plaintiff to menial tasks, forbid Plaintiff to leave his desk without permission, restricted Plaintiff from using the agency gym for work-outs, monitored Plaintiff's compliance with work policies, and limited Plaintiff's use of a government vehicle.  Pl.'s Ex. 1 at 99-106.  In addition to the conduct Plaintiff identified in his deposition testimony, Plaintiff identifies as adverse action,  public criticism for routine work procedures in front of fellow employees, private warning to fellow employees not to work with Plaintiff; downgraded performance appraisals, and, finally, an incident in October 2001, when Hill made an obscene gesture to Plaintiff.  See Complaint at ¶¶ 12 and 13.

The issue before the Court is whether this conduct, considered cumulatively, reaches the level of an adverse employment action.  In this circuit, an adverse action must be "materially adverse."  Kocsis v. Multi-Care Management, Inc., 97 F.3d 876, 886 (6th Cir.1996).  To constitute a material adverse employment claim, the challenged conduct must result in a loss of pay, benefits, or duties. Id.  Mere inconvenience or an alteration of job responsibilities does not constitute a material adverse action.  Id.  The Supreme Court, in Burlington Industries v. Ellerth, agreed, stating that "[a] tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."  524 U.S. 742, 761 (1998).

-17-

None of these incidents altered Gardner's pay, benefits or duties.  Even taken in total, the conduct challenged here does not rise to the level of a materially adverse employment action as defined by case law.

### 2.  Retaliatory harassment

Likewise the facts of this case do not support a claim that Defendant engaged in retaliatory harassment.  In Hardy v. Potter, 191 F.Supp.2d 873, 883 (E.D. Mich. 2002)(citations omitted), the court observed,  "Retaliatory harassment by a supervisor does not, in and of itself, constitute a tangible employment action.  The action by the supervisor must be so 'severe or pervasive' as to alter the conditions of the victim's employment and create an abusive working environment."  Here, in addition to the conduct identified above, Plaintiff complains that after the September 2001 activity, Hill yelled at him and made an obscene gesture.  The conduct at issue is not, as a matter of law, sufficiently severe or pervasive to create an abusive working environment.  See Ceckitti v. City of Columbus, No. 00-3423, 2001 WL 814935, *4 (6th Cir. July 12, 2001) (noting that the "proper application of Title VII to employment claims is meant to filter out complaints attacking 'the ordinary tribulations of the workplace.' Just as conduct must be 'extreme' to amount to a change in the terms and conditions of employment, it must also be extreme to constitute severe and pervasive retaliatory harassment") (citations omitted).  When viewed in the light most favorable to Plaintiff, the conduct of Defendant simply does not rise to the level of severe or pervasive retaliatory harassment.  In sum, Plaintiff has failed to show the existence of a genuine issue of material fact as to the third prong of his prima facie case of Title VII retaliation.

-18-

### 3. Causal Connection

To make a prima facie case of the causal connection prong, a plaintiff must do more that say he filed a complaint and bad things happened.  To establish a causal connection between the protected activity and the adverse employment action, the plaintiff may proffer "evidence that the adverse action was taken shortly after the plaintiff's exercise of protected rights," Nguyen v. City of Cleveland, 229 F.3d 559, 563 (6th Cir. 2000); however, proximity in the absence of other evidence of causation is not sufficient to raise an inference of a causal link.  Parnell v. West, No. 95-2131, 1997 WL 271751, at *3, n. 1 (6th Cir. May 21, 1997) (noting that although "[a] time lag of seven months does not necessarily support an inference of a causal link[,] previous cases that have permitted a prima facie case to be made based on the proximity of time have all been short periods of time, usually less than six months").  See also Hafford v. Seidner, 183 F.3d 506, 515 (6th Cir. 1999) (noting that discriminatory action occurring within two to five months after filing an EEO complaint, "absent additional evidence [is] too loose" a temporal connection to create a triable issue of fact).  Plaintiff has no direct evidence of retaliation, and the mere fact that an adverse employment action occurred after protected activity is not sufficient, standing alone, to support a finding of a causal connection.  Booker v. Brown & Williamson Tobacco Co., 879 F.2d 1304, 1314 (6th Cir. 1989).

Here, Plaintiff's initial EEO activity occurred in January 2000.  Even if the Court were to consider the failed promotion attempts, simply too much time had passed between those events and Plaintiff's protected activity to create an inference that the

discipline was retaliatory. Over a year had passed when Plaintiff was denied a lateral transfer. The same passage of time severs any inference of causal connection between Plaintiff's activity and his "blocked" promotions.

Plaintiff's strategy to support a causal connection fails to create any genuine issue of material fact as to this element of his prima facie case. His sole support is found in his contention that there is "no evidence at all, anywhere in the record, that this kind of thing has ever happened to anyone who has not complained of discrimination or filed a charge." Pl.'s Brief at 19. This statement does not satisfy Plaintiff's burden.

Accordingly, the Court finds that even if Plaintiff had complied with the exhaustion and time deadlines for filing his claim, he has failed to meet his burden on summary judgment to demonstrate the existence of a genuine issue of material fact that he suffered retaliation for engaging in protected activity. Again, the passage of time does not afford Plaintiff the benefit of an inference of a causal link based on temporal proximity. For these reasons, the Court finds that even if Plaintiff's claim of retaliation in violation of Title VII had been exhausted, it must be dismissed.

## IV. Conclusion

For the above-stated reasons, this Court GRANTS Defendants' Motion for Summary Judgment. Plaintiff's Complaint is DISMISSED in its entirety.

**IT IS SO ORDERED.**

                            s/Marianne O. Battani
                             MARIANNE O. BATTANI
                       UNITED STATES DISTRICT JUDGE

Date: April 24, 2006

**CERTIFICATE OF SERVICE**

     Copies of this Order were mailed to Vanessa Miree Mays and Joel Kirkpatrick on this date by ordinary mail and/or electronic filing.

                             s/Bernadette Thebolt
                             DEPUTY CLERK